UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**LYNN MELANCON, ET AL.**                              **CIVIL ACTION**

**VERSUS**                                                      **NO. 12-2455**
                                                              **C/W NO. 12-2761**
                                                              **C/W NO. 12-3051**

**GREAT SOUTHERN DREDGING, INC., ET AL.**              **SECTION "K"(2)**

## ORDER AND REASONS

**Background**

The background concerning how this matter came to be heard is set forth in greater detail in the Court's Order and Reasons of March 9, 2015. (Doc. 151). For purposes of this Order and Reasons, the Court incorporates those previous factual findings and augments the relevant history as to the fee dispute between the Falcon Law Firm and Timothy J. Falcon ("Falcon") and Waitz and Downer Law Firm ("Waitz and Downer") herein.

On January 21, 2015, the Court conducted a telephonic status conference to discuss the then pending Motion to Enforce Settlement (Doc. 104) and Motion for Leave to Deposit Funds into the Registry of the Court and for Summary Judgment (Doc. 106). (See Doc. 129). Based on the Court's retention of jurisdiction for all purposes, including enforcing the settlement agreement into which the parties entered and taking into account the statutory lien of Falcon as to a portion of the Guidrys'[1] settlement funds, the Court reopened this matter to resolve this dispute. It granted Great Southern's Motion for Leave to Deposit Funds into the Registry of the Court and for Summary Judgment discharging all defendants from any further liability for the claim the Guidrys. After a vigorous motion practice, this matter came for hearing on May 14,

---

[1] Michael Guidry and Monica Guidry are referred herein as "the Guidrys."

2015, so that the Court could make a determination as to how these competing claims for attorneys' fees would be resolved.

Preliminarily, under Louisiana law, when there is a fee dispute, the total fee assessed is to be based on the highest contingency fee contract. In this instance, Falcon had the highest contingency fee contract which contract was for 40% of the amount recovered plus expenses. Based on the settlement recovery, the fee amount deposited in the Registry of the Court is $680,000.00, which does not include expenses owed. However, Waitz and Downer in the settlement negotiations agreed to reduce their fee, and as a result thereof, plaintiffs are entitled to $114,000.00 of the money deposited in the registry of the Court. Such an amount shall be allocated to plaintiffs, and this amount must be deducted from any amount awarded to Waitz and Downer herein.

However, there remains a dispute as to the actual amount to which each law firm is entitled. After hearing the testimony presented, reviewing the exhibits introduced and considering the relevant law, the Court finds as follows.

**Legal Standard**

As Judge Roby stated succinctly in *Langley v. Norton*, 2003 WL 21991643 (E.D.La. Aug. 19, 2003):

> Under its inherent judicial power and its original jurisdiction, the Supreme Court of Louisiana has exclusive authority to regulate the practice of law in this state. La. Const. art. V, § 5(B); *Mire v. City of Lake Charles*, 540 So.2d 950 (La.1989). This broad grant of regulatory power includes the responsibility to exert control by adjudicatory means of individual cases as they arise, including those relative to discharge of counsel and regulation of fees, whether by contingency contract or otherwise. *Saucier v. Hayes Dairy Products, Inc.*, 373 So.2d 102, 118 (La.1979).

. . .

The seminal decision of *Saucier v. Hayes Dairy Products, Inc.*, 373 So.2d 102, 118 (La.1979), discussed the awarding of attorney's fees to a discharged attorney who had been retained pursuant to a contingency contract. In *Saucier*, the Louisiana Supreme Court held that in a case involving two attorneys with separate contingency fee contracts with the client, one attorney having been discharged without cause and the subsequent attorney having brought the case to judgment or settlement, the contingency fee is to be apportioned according to the services performed by each attorney. *Saucier*, 373 So.2d at 118. The proportionate services are to be determined according to the factors contained in Rule 1.5(a) of the Rules of Professional Conduct. Rule 1.5(a) provides:

(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) The fee customarily charged in the locality for similar legal services;
>
> (4) The amount involved and the results obtained;
>
> (5) The time limitations imposed by the client or by the circumstances;
>
> (6) The nature and length of the professional relationship with the client;
>
> (7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) Whether the fee is fixed or contingent.

A trial court's apportionment of a contingency fee according to these "Saucier factors" is a factual determination and as such may not be disturbed absent manifest error. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993); *Osborne v. Vulcan Foundry, Inc.*, 699 So.2d 492, 494 (La.App. 4 Cir.1997). Thus, the amount prescribed in the contingency fee contract is the proper frame of reference for fixing compensation for the attorney prematurely discharged without cause. Id.

> In *O'Rourke v. Cairns*, 683 So.2d 697, 700 (La.1996), the Louisiana Supreme Court reaffirmed the factors and policies articulated in Saucier; however, the court modified the analysis for cases involving attorneys who have been discharged for cause. The court held that in cases of discharge with cause of an attorney retained on contingency, the trial court should determine the amount of the fee according to the Saucier rule, calculating the highest ethical contingency to which the client contractually agreed in any of the contingency fee contracts executed. *O'Rourke*, 683 So.2d at 704. The court should then allocate the fee between or among discharged and subsequent counsel based upon the Saucier factors. *Id*. Thereafter, the court should consider the nature and gravity of the cause which contributed to the dismissal and reduce by a percentage amount the portion discharged counsel otherwise would receive after the Saucier allocation. *Id*.

With this framework in mind, the Court will analyze the case at hand.

**The *Saucier* Factors**

Applying the first *Saucier* factor, the Court finds that the instant matter was not particularly difficult; however, since this case was brought in a limitation of liability proceeding, an adequate knowledge of admiralty law was required.  The time required for this specific case was approximately 30 months from the time Falcon was retained until the time the settlement agreement was executed.  Therefore, Falcon spent approximately 18 months representing plaintiffs' interest and Waitz and Downer spent about 12 months thereafter.

During the 18 months Falcon represented plaintiffs, that firm filed a worker's compensation claim with the U.S. Dept. of Labor; filed a lawsuit in the 24th Judicial District Court on October 10, 2012; responded to Great Southern's Limitation of Liability claim in federal court; coordinated the medical treatment for plaintiff; and conducted some discovery in the aforementioned claims.  Mr. Falcon testified that the amount of hours expended by Falcon was approximately 169.6 hours.  Of course, because this matter is a personal injury case, time

sheets were not meticulously kept, and this estimate is a reconstruction thereof based on the best efforts of Falcon to estimate the time expended.

Waitz and Downer testified that it spent approximately 1900 hours working on the file. Likewise, this is a reconstruction of the time as no meticulous time records were kept. At the hearing, Mary Waitz Riviere estimated that she spent approximately 800 hours on this case; Hunt Downer estimated he worked in a range between 300 and 400 hours; and Joe Waitz, Jr. estimated that he spent 200 hours on the case. Mr. Downer also testified that Mr. David Pellegrin worked approximately 200 hours.

Regardless of the precise amount of time spent on this file by Waitz and Downer, the firm's attorneys attended all of the depositions taken in this case. Ms. Riviere testified that she received 604 e-mails and sent 310 e-mails. Additionally, she received 86 attachments, some voluminous, which she reviewed. Waitz and Downer spent a significant amount of time talking with Mr. and Mrs. Guidry. They participated in a mediation with the other claimants in the limitation and achieved a successful resolution of the matter. After the mediation, these attorneys did additional work to resolve issues with the United States Department of Labor and other issues prior to the execution of the settlement agreement.

Under his cross-examination of Waitz and Downer, Mr. Falcon elicited the fact that in all the depositions, very few questions were actually posed by the Waitz and Downer representative therein. Although the Court will not make a finding that Waitz and Downer actually spent 1900 hours representing the Guidrys, it does find that at least 1400 hours were spent on this matter by that firm.

Although this Court finds that in this case the first *Saucier* factor, specifically, the time and labor required, is the most significant of the factors, the Court will consider the remaining ones.  As to the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer, this factor would apply equally to both, to the extent that it is applicable at all.  With respect to the fee customarily charged in the locality for similar legal services, each fee was a contingent fee and thus, the factor is neutral.  As to the amount involved and the results obtained, a substantial settlement was achieved primarily by the efforts of Waitz and Downer and thus weighs in favor of that firm.  The Court finds the factor concerning time limitations imposed by the client or by the circumstances as inapplicable.

With respect to the nature and length of the professional relationship with the client, although the length of representation by Falcon of the client was longer, the length of the relationship by each firm has been addressed above. The Court will discuss the nature of the relationship in its discharge for cause analysis.  As to the experience, reputation, and ability of the lawyer or lawyers performing the services, each of the firms is qualified to undertake this matter.  Finally, as previously stated, the fee was contingent as to both firms making it a neutral factor.

**Discharge for Cause**

The next inquiry which bears upon the Court's ultimate allocation of these proceeds concerns whether Falcon was discharged for cause.  Mr. and Mrs. Guidry  testified at the hearing outlining with particularity their reasons for discharging Falcon.  There were four general areas of dissatisfaction noted by them. Specifically, (1) mis-communication or lack of communication; (2) failure to provide representation to Mr. Guidry at his social security hearing; (3) delay in obtaining a bone stimulator following his surgery; and (4) failure to properly advise and represent the Guidrys in relation to their home foreclosure.  This Court finds that the two most significant complaints by the Guidrys concerned the lack of representation at the social security hearing and the lack of advice and/or representation with the foreclosure issue.

This Court finds as a fact that the failure to provide Mr. Guidry representation at a critical social security hearing constitutes a basis to find discharge Falcon for cause.  Mr. Jeremiah Sprague, a member of Falcon, testified that he met with Mr. Guidry the day before the hearing, and he advised Mr. Guidry that he could go to the hearing and request another date or he could handle the matter himself (Rec. Doc. 203, Transcript of Hearing at 68-69).  Sprague also testified that he spoke to another attorney who is an expert in social security matters and was apprised by that attorney that she was of the opinion that Guidry should prevail.

Falcon was aware that Dr. Chris Cenac, retained by the Social Security Administration to render an opinion had opined that Mr. Guidry was not disabled.   Moreover, the Guidrys at this time were in dire financial straits, and it was critical that Mr. Guidry be found disabled at this hearing at that time.  Moreover, Mr. Guidry is a man of limited education and limited ability to express himself.   The Court finds that the conduct of Falcon in its failure to represent Mr.

Guidry at the appointed time was at best extremely insouciant or at worst constituted callous disregard for the welfare of Mr. Guidry and his family.

The Court finds that the issue of the foreclosure on the Guidry home was also inappropriately handled by Falcon. Mrs. Guidry testified that she was apprised by Falcon that they would "take care of" the foreclosure issue; she did not know how they were going to do so, but she relied on that statement. The Court finds that the communication as to this issue was at best incoherent.

For these reasons, the Court finds that the discharge of Falcon was reasonable as contemplated in *O'Rourke*.

**Allocation of Proceeds**

For the reasons stated above, utilizing the *Saucier* factors, the Court finds that the appropriate allocation should be 70% to Waitz and Downer and 30% to Falcon. Further, based on the finding of discharge for cause, the Court must analyze the nature and gravity of the reasons for which the Guidrys discharged the Falcon firm to reduce by a percentage amount the portion discharged counsel otherwise would receive after the Saucier allocation. Based on the findings outlined above, the Court reduces the 30% portion due to Falcon by 25%. Furthermore, Falcon is entitled to receive $19,250.00 in costs and expenses which shall be deducted from the $114,000 of the additional proceeds promised by Waitz and Downer to the Guidrys. The Court thus itemizes the award below:

| **Attorney Fee Award** $680,000.00 | Due Falcon | Due Waitz and Downer | Due Guidrys |
| --- | --- | --- | --- |
| Saucier Factors | 30% = $204,000 | 70% = $ 476,000 | |

| | | | |
|---|---|---|---|
| decrease Falcon per *O'Rourke* Factors and add that amount to Waitz and Downer | subtract 25% of $204,000 - $51,000 from $204,000= **$153,000** | add the *O'Rourke* reduction of $51,000 to $476,000 which equals **$ 527,000** | |
| Give attorney fee reduction agreed to by Waitz and Downer to Guidrys | **$153,000** | $527,000-114,100 = **$413,000** | **$114,000** |
| Costs awarded to Falcon from portion of Guidry award | $153,000 + 19,250= **$172,250** | **$413,000** | $114,000- $19,250= **$94,750** |
| **FINAL AWARD** | **$172,250.00** | **$413,000** | **$94,750** |

Accordingly, based on the foregoing,

**IT IS ORDERED** that judgment be entered ordering the Clerk of Court to distribute with interest accrued from the funds deposited into the Registry of the Court pursuant to this Courts order dated January 21, 2015 (Doc. 129) the following amounts:

The Falcon Law Firm                           $ 172,250.00

Waitz and Downer                              $ 413,000.00

Michael Guidry and Monica Guidry              $ 94,750.00

New Orleans, Louisiana, this 22nd day of June, 2015.

_____
**STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT COURT JUDGE**